IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TRUSTEES OF THE NATIONAL ASBESTOS WORKERS MEDICAL FUND | * | |
| | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. RDB-12-225 |
| A1 MECHANICAL INSULATION, L.L.C. | * | |
| | * | |
| Defendant. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

The Plaintiffs, Trustees of the National Asbestos Workers Medical Fund ("Plaintiffs"), filed this action against the Defendant A1 Mechanical Insulation, L.L.C. ("Defendant"). The Plaintiffs move, under sections 502 and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132, 1145, and section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), for unpaid contributions, interest on those unpaid contributions, and attorneys' fees and costs pursuant to the collective bargaining agreement and trust agreement between the Defendant and the Asbestos Workers Local Union No. 73. Because the Defendant has failed to appear, answer, plead, or otherwise defend in this matter, the Plaintiffs now seek an entry of default judgment against the Defendant pursuant to Rule 55 of the Federal Rules of Civil Procedure. For the reasons that follow, the Motion for Default Judgment filed by the Plaintiffs (ECF No. 6) is GRANTED. Judgment in the amount of $38,887.00 SHALL BE ENTERED for unpaid contributions and interest against the Defendant A1 Mechanical Insulation, L.L.C.

Attorneys' fees and costs SHALL BE ENTERED in the amount of $1,686.00 and SHALL BE INCLUDED in the judgment. Additionally, interest will continue to accrue on unpaid contributions at the rate of 1½% per month through the date of payment. Thus, the total amount of damages awarded to the Plaintiffs is $40,573.00, plus post-judgment interest. Additionally, Plaintiffs are awarded the injunctive relief they seek—namely, the Defendant shall permit the Plaintiffs to conduct an audit of its wage and payroll records for the period from November 1, 2010, through the date of the audit.

BACKGROUND

The essence of this case is the Plaintiffs' allegation that the Defendant failed to make monthly contributions required under the parties' collective bargaining and trust agreements. The following facts are alleged in the Plaintiffs' Complaint. The Plaintiffs, Trustees of the National Asbestos Workers Medical Fund ("Plaintiffs" or the "Fund"), constitute a multiemployer benefit plan under the Employee Retirement Income Security Act ("ERISA"). Compl. ¶ 2. The Fund is administered in Columbia, Maryland. *Id.* It is established by and maintained in accordance with the Restated Agreement and Declaration of Trust (the "Trust Agreement") and the Collective Bargaining Agreement between the Asbestos Workers Local Union No. 73 (the "Union") and the Defendant A1 Mechanical Insulation, L.L.C. ("Defendant"). *Id.*

The Defendant is an Arizona corporation in the insulation industry. *Id.* ¶ 3. It entered into the Collective Bargaining Agreement and Trust Agreement with the Union in order to establish terms and conditions for heat and frost insulator employees. *Id.* ¶ 4. Pursuant to the Collective Bargaining Agreement, the Defendant agreed to pay contributions

2

to the Fund based on hours worked by Union employees who are covered by the Collective Bargaining Agreement. *Id.* ¶ 5. The Defendant employed Union employees during a period from November 2010 through the date on which the Plaintiffs filed their Complaint, January 23, 2013. *Id.* ¶ 6. The Defendant failed to pay monthly contributions to the Fund from November 2010 through at least March 2012. *See* Rockstroh Aff. ¶¶ 4-12, ECF No. 6-3.

On January 23, 2012, the Plaintiffs filed suit to recover the alleged outstanding payments from the Defendant pursuant to sections 502(g)(2) and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(g)(2), 1145, and section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). *See* Compl., ECF No. 1. At the time of filing, the Plaintiffs believed the Defendant had failed to pay monthly contributions during a period from "December 2010 through November 2011," totaling $17,507.95. Compl. ¶ 14.

In Count I of the two-count Complaint, the Plaintiffs request damages in the amount of the Defendant's unpaid contributions, as well as interest accruing on those unpaid contributions and damages and interest for contributions that become due subsequent to the filing of the action. *Id.* In Count II, the Plaintiffs seek an injunction requiring the Defendant to permit an audit of its records so that the Plaintiffs can determine the precise extent of the Defendant's delinquency. *Id.* ¶ 23. They ask that the Defendant pay all expenses relating to this audit. *Id.* The Plaintiffs also request that after an audit has been conducted, the Court enter judgment for damages revealed by the audit, including interest on unpaid contributions and reasonably attorneys' fees and costs. *Id.*

After the Plaintiffs filed their Complaint on January 23, 2012, the summons and Complaint were properly served on the Defendant on April 2, 2012. *See* Order of Default, ECF No. 7. Accordingly, the Defendant's answer was due on April 23, 2012. *Id.* Because the Defendant did not file a response or any affirmative defenses by this deadline, the Clerk of Court filed an entry of default on May 1, 2012. *See id.* As the Defendant has failed to appear, answer, plead, or otherwise defend in this matter, the Plaintiffs now seek an entry of default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure.

STANDARD OF REVIEW

Entries of default and default judgments are governed by Rule 55 of the Federal Rules of Civil Procedure. Rule 55(a) provides that "[w]hen a party . . . has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." If, after entry of default, the plaintiff's complaint does not specify a "sum certain" amount of damages, the court may enter a default judgment against the defendant pursuant to Rule 55(b)(2). In considering a motion for default judgment, this Court accepts as true the well-pleaded factual allegations in the complaint as to liability. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001). However, "liability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability." 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2688 (3d ed. 1998); *see also Ryan*, 253 F.3d at 780-81. Although the United States Court of Appeals for the Fourth Circuit has a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment "is appropriate when

the adversary process has been halted because of an essentially unresponsive party," *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

If the court finds that liability is established, it must then turn to the determination of damages. *See Ryan*, 253 F.3d at 780-81. The court must make an independent determination regarding damages and cannot accept as true factual allegations of damages. *See Lawbaugh*, 359 F. Supp. 2d at 422. Rule 54(c) of the Federal Rules of Civil Procedure limits the type and amount of damages that may be entered as a result of a party's default: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Where a complaint does not specify an amount, "the court is required to make an independent determination of the sum to be awarded." *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (citing *S.E.C. v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir. 1975)). In doing so, "[i]t is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." *Pope v. United States*, 323 U.S. 1, 12 (1944). While the court may conduct an evidentiary hearing to determine damages, it is not required to do so; it may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. *See, e.g.*, *Mongue v. Portofino Ristorante*, No. WDQ-09-3144, 2010 WL 4629898, at *3-4 (D. Md. May 25, 2010) (collecting cases); *see also* 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2688 (3d ed. Supp. 2010).

<u>ANALYSIS</u>

Because the Defendant has failed to defend in this action and the Clerk of Court has filed an entry of default, the requirements for ordering default judgment have been met. *See* Fed. R. Civ. P. 55(a)-(b).   As this Court has previously found, default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party." *Lawbaugh*, 359 F. Supp. 2d at 421.   For the reasons stated below, the Plaintiffs are entitled to default judgment.   This Court first reviews the allegations supporting the Defendant's liability and then determines the appropriate amount of damages.   In determining damages, this Court finds that no evidentiary hearing is necessary and instead relies on the affidavits and other evidence in the record to determine the appropriate sum. *See, e.g.*, *Mongue v. Portofino Ristorante*, 2010 WL 4629898, at *3-4.  This Court likewise uses the evidence in the record to review the Plaintiffs' request for injunctive relief.

## I.  The Defendant's Liability

In considering a motion for default judgment, this Court accepts as true the well-pleaded factual allegations in the complaint as to liability.   *See Ryan*, 253 F.3d at 780-81. Nevertheless, this Court must determine "whether the well-pleaded allegations . . . support the relief sought in this action."   *Id.* at 780.  The Plaintiffs allege that under the Collective Bargaining Agreement and Trust Agreement, the Defendant agreed to make monthly contribution payments to the Fund and submit remittance reports detailing its monthly obligations.   Rockstroh Aff. ¶¶ 3, 7.  The Defendant also agreed, under the terms of the Trust Agreement, that if it failed to make its monthly contributions,

> . . .  there shall be added and become a part of the amount due and
> unpaid: (1) liquidated damages for each monthly report or payment due to

6

the Fund, in the amount of twenty percent (20%) of the amount due or 20 dollars, whichever is greater, plus interest at the rate of eight percent (8%) from the due date to the date of payment; or (2) interest at the rate of 1½% per month; or (3) double interest as provided in the Act.

*Id.* ¶ 13.

In support of the Plaintiffs' claim that the Defendant violated the terms of the Labor Contracts, they filed the affidavit of Simone L. Rockstroh, the President of Carday Associates, Inc., the administrative agent for the Fund.  Rockstroh Aff. ¶ 1.  Ms. Rockstroh attests that the Defendant entered the Collective Bargaining Agreement and Trust Agreement with the Union, and that based on those agreements it now owes at least $34,585.04 for unpaid contributions during a period from November 2010 through March 2012.[1]  The amounts owed are also set forth in a table attached to Ms. Rockstroh's Affidavit and illustrating both the monthly contributions and interest that has accrued.  *See* Pls.' Ex. B, ECF No. 6-4.

The contribution amounts to which Ms. Rockstroh attests are in large part based on the monthly remittance reports submitted by the Defendant during a period from December 2010 through June 2011 and October 2011 through December 2011.  Rockstroh Aff. ¶ 5.  In certain months during which the Defendant employed Union members covered by the Collective Bargaining Agreement, however, the Defendant neither paid its monthly

---

[1] Rockstroh Aff. ¶¶ 5-11.  The Plaintiffs explain in their Motion for Default Judgment that the amount owed by the Defendant has changed since this action was filed.  Mot. Default J. 1, ECF No. 6-1.  At the time of filing, the Plaintiffs believed that the Defendant owed, during a period from "December 2010 through November 2011," $17,507.95.  Compl. ¶ 14.  Based on information now available to the Plaintiffs, they now claim a delinquency of $34,585.04, a figure supported by Ms. Rockstroh's Affidavit.

contributions nor submitted remittance reports. *Id.* ¶¶ 9-11. For those months, the Plaintiffs have provided an estimate of the amount owed. As Ms. Rockstroh attests, the Trust Agreement explains that when an employer fails to fail remittance reports, the Fund may estimate the delinquency amount using the following formula:

> . . . The Trustees may project as the amount of the delinquency the greater of (a) the average of the monthly payments or reports actually submitted by the Employer for the last three (3) months for which payments or reports were submitted or (b) the average of the monthly payments or reports submitted by the Employer for the last twelve (12) months for which payments or reports were submitted.

*Id.* ¶ 8. Ms. Rockstroh states that the Defendant owes a projected $2,174.40 for the month of November 2010;[2] $1,191.89 for each of the months of July, August, and September 2011; and $2,881.08 for each of the months of January, February, and March 2012. *Id.* ¶¶ 9-11. In addition, Ms. Rockstroh calculates that the Defendant owes at least $4,301.96 in interest assessed on late payments for the period from November 2010 through March 2012 at the rate of 1½% in accordance with the Trust Agreement. *Id.* ¶ 14. The monthly breakdown of interest accruing on the unpaid contributions is set forth in the table attached as Plaintiffs' Exhibit B.

The unpaid contributions to which Ms. Rockstroh attests support the Plaintiffs' cause of action under the Employee Retirement Income Security Act ("ERISA") and the Labor Management Relations Act. Specifically, the Plaintiffs bring suit under section 515 of

---

[2] Ms. Rockstroh explains that because the Defendant did not submit remittance reports prior to December 2010, he estimated the contribution amount owed for November 2010 using the reports for the first three months in which the Defendant submitted reports, December 2010 and January and February 2011. Rockstroh Aff. ¶ 9.

ERISA, which states as follows:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.  Moreover, section 502(g) of ERISA, on which the Plaintiffs also rely, states that in an action under section 1145 in which judgment is awarded in favor of the pension plan, the court shall award the following: (1) unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages in "an amount equal to the greater of . . . (i) interest on the unpaid contributions, or . . . (ii) liquidated damages provided for under the plan not in excess of 20 percent" of the unpaid contributions; (4) reasonable attorneys' fees and costs; and (5) "such other legal and equitable relief as the court deems appropriate."  29 U.S.C. § 1132(g)(2).  The Supreme Court has stated that these sections of ERISA "provide trustees of multiemployer benefit plans with an effective federal remedy to collect delinquent contributions."  *Laborers Health & Welfare Trust Fund for Northern Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 541 (1988).  The Court of Appeals for the Fourth Circuit has likewise found that in an action based on section 515 of ERISA, "a multiemployer plan can enforce, as written, the contribution requirements found in the controlling documents." *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021 (4th Cir. 1997).  Therefore, the Plaintiffs well-pleaded factual allegations support the relief requested under ERISA.

The Plaintiffs also sue under section 301 of the Labor Management Relations Act, 29

U.S.C. § 185(a).  Section 301(a) states as follows:

> Suits for violation of contracts between an employer and a labor
> organization representing employees in an industry affecting commerce
> as defined in this chapter, or between any such labor organizations,
> may be brought in any district court of the United States having
> jurisdiction of the parties, without respect to the amount in
> controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).  Section 301(a) is the original source of pension fund collection suits in

federal court.  *See, e.g., Lewis v. Benedict Coal*, 361 U.S. 459, 470 (1960).  Plaintiffs allege that

the Defendant was a party to the Collective Bargaining and Trust Agreements with the

Union and was required under those contracts to make monthly contribution payments.

The Plaintiffs' well-pleaded allegations establish the Defendant's liability for breach of those

agreements.  This dispute—a suit for violation of labor contracts—can thus be remedied

under Section 301.  For this reason, Section 301 also provides a basis for the Plaintiffs' suit.

## II. The Plaintiffs' Award of Damages and Injunctive Relief

In this action based on ERISA and breach of contract, the Plaintiffs are entitled to

the following damages: (1) the amount of the Defendant's unpaid contributions; (2) interest

on those unpaid contributions; (3) an amount equal to the greater of (a) the interest on the

unpaid contributions or (b) liquidated damages provided for under the plan and not in

excess of 20 percent of the unpaid contributions; (4) reasonable attorneys' fees and costs;

and (5) other legal and equitable relief this Court deems appropriate.  *See* 29 U.S.C. §

1132(g)(2).

In support of the Plaintiffs' request for unpaid contributions and interest, they submit

the affidavit of Ms. Rockstroh, ECF No. 6-3, and a table breaking out the monthly

contributions and interest owed by the Defendant, ECF No. 6-4.  In support of their request

for attorneys' fees and costs, they submit the affidavit of Charles W. Gilligan, the counsel of record of the Plaintiffs.   *See* Gilligan Aff., ECF No. 6-5.   The Plaintiffs also submit an itemized list of the fees and costs expended by Plaintiffs' counsel, *see* ECF No. 6-6, and a copy of the private process server fee incurred for out-of-state service of process on the Defendant, ECF No. 6-7.   The Plaintiffs assert that the Defendant owes $34,585.04 in unpaid contributions; $4,301.96 in interest; $1,186.00 in attorneys' fees; and $500.00 in costs, for a total damages award of $40,573.00.

The Plaintiffs also seek injunctive relief in the form of a court order requiring the Defendant to permit a complete audit of its wage and payroll records for the period from November 1, 2010, through the date of the audit.   In connection with this request, the Plaintiffs ask that the Defendant be required to pay for this audit, and "that upon Affidavit of the Plaintiffs a Judgment may be entered in the full amount revealed as owing by this audit, plus interest from the date of any delinquency through the date of payment." Proposed Order, ECF No. 6-2.

A. Unpaid Contributions

Ms. Rockstroh, the President of Carday Associates, Inc., the Fund's administrative agent, attests that the Defendant owes $34,585.04 in unpaid contributions for the period from November 2010 through March 2012. Rockstroh Aff. ¶¶ 5-11.  This amount is in large part based on reports prepared by the Defendant showing a delinquency of $20,191.72. *Id.* ¶ 5.  The remainder, $14,393.32, is an estimate of the contributions owed for the months of November 2010; July, August, and September 2011; and January, February, and March 2012. *Id.* ¶¶ 9-11.  In these months the Defendant failed to submit remittance reports.  *Id.*  The

Plaintiffs came to this amount by averaging the three months of contributions owed during the previous three months, or, for November 2010, by averaging the three months of contributions owed during the first three months in which Defendants ever reported.  *Id.*  Ms. Rockstroh attests to, and this Court has verified, the Plaintiffs' calculations, illustrated in paragraphs 9, 10, and 11 of the affidavit.  After reviewing the competent evidence in support of this figure, this Court awards the Plaintiffs $34,585.04 in unpaid contributions.

      B.  <u>Interest</u>

Because the Defendant failed to make its monthly contributions to the Fund, the Plaintiffs are also owed interest on those unpaid contributions.  ERISA provides for an award of interest on unpaid contributions "determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26."  29 U.S.C. § 1132(g)(2).  The Trust Agreement provides the following with regard to interest accruing on unpaid contributions:

> If an Employer fails to file reports or make contributions within ten (10) calendar days of the due date, there shall be added and become a part of the amount due and unpaid: (1) liquidated damages for each monthly report or payment due to the Fund, in the amount of twenty percent (20%) of the amount due or 20 dollars, whichever is greater, plus interest at the rate of eight percent (8%) from the due date to the date of payment; or, (2) interest at the rate of 1½% per month; or (3) double interest as provided in the Act.

Rockstroh Aff. ¶ 13.  Applying the interest rate of 1½% per month, the Plaintiffs submit, and Ms. Rockstroh attests, that they are owed $4,301.96 in interest, from the date that the Defendant's contributions first came due in November 2010 through March 2012.  After reviewing the competent evidence in support of this figure, this Court awards the Plaintiffs

$4,301.96 in interest.  Pursuant to the Trust Agreement, interest will continue to accrue on the unpaid contributions at a rate of 1½% per month, through the date of payment.

    C.  Attorneys' Fees and Costs

    "In an ERISA action, a district court may, in its discretion, award costs and reasonable attorneys' fees to either party under 29 U.S.C. § 1132(g)(1), so long as that party has achieved some relative degree of success on the merits." *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 634 (4th Cir. 2010) (citations omitted).  The Trust Agreement likewise provides for payment of attorneys' fees and costs incurred when an employer fails to pay contributions in a timely fashion.  Rockstroh Aff. ¶ 21.  The Plaintiffs submit that in seeking to collect unpaid contributions from the Defendant, they have incurred attorneys' fees and costs in the amount of $1,686.00.  Gilligan Aff. ¶ 7, ECF No. 6-5 (calculating fees in the amount of $1,186.00 and costs in the amount of $500.00).  In support of this figure, the Plaintiffs filed the affidavit of Charles W. Gilligan, an attorney employed by O'Donoghue & O'Donoghue LLP and the counsel of record of the Plaintiffs. *See id.* ¶ 1.  The Plaintiffs also submitted an itemized list of the fees expended by Plaintiffs' counsel, *see* ECF No. 6-6, and a copy of the private process server fee incurred for out-of-state service of process on the Defendant, ECF No. 6-7.

    The Supreme Court has established a method, commonly called the "lodestar," for determining a reasonable fee.  The starting point in the lodestar calculation is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).  In addition, the specific facts of the case are to be considered in calculating a reasonable figure.  The Supreme Court has endorsed a list of

twelve factors, first articulated by the Court of Appeals for the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), which aid a court in determining a reasonable fee. These factors include the following:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 717-719. The Court of Appeals for the Fourth Circuit has directed courts to consider these twelve factors when calculating the lodestar amount. *Robinson v. Equifax Info. Servs.*, 560 F.3d 235, 243-44 (4th Cir. 2009).

Applying the lodestar method to the Plaintiffs' request, this Court determines that fees and costs in the amount of $1,686.00 are reasonable and should be awarded. Mr. Gilligan billed at an hourly rate of $208 prior to February 2012, and $215 beginning in February 2012. Gilligan Aff. ¶¶ 4-5. A paralegal assigned to the case billed at an hourly rate of $115 prior to February 2012, and $120 beginning in February 2012. *Id.* Mr. Gilligan attests that his years of practice place him in the range of "item 3d of the Court's Rules and Guidelines." *Id.* ¶ 4. His hourly rate falls within the range of reasonable hourly rates provided in the "Rules and Guidelines Determining Lodestar Attorneys' Fees" ("Local Guidelines"), which are a component of the Local Rules for the District Court of Maryland. D. Md. Loc. R. App'x B. Specifically, the Local Guidelines advise that a reasonable hourly rate for an attorney admitted to the bar for fifteen years or more (i.e., the range in "item 3d," Gilligan Aff. ¶ 4) is $275 to $400. *Id.* § 3(d). Additionally, the Local Guidelines advise that a

14

reasonable hourly rate for a paralegal is somewhere between $95 and $115.  *Id.*  Mr. Gilligan's hourly rates of $208 and $215 are far below the range of reasonable rates, and the paralegal's hourly rates of $115 and $120 are at or just slightly above the suggested range in the Local Guidelines.  *See id.*  Accordingly, this Court finds these hourly rates to be reasonable.

The Plaintiffs submitted an itemization of legal fees and costs.  *See* ECF No. 6-6 (listing legal fees totaling $1,186.00 and costs totaling $500.00).  This itemization shows that the attorneys billed a total of 8.25 hours—nearly 6 hours in case development and 2.5 hours preparing the motion for default judgment and calculations supporting that motion.  *Id.* These hours are reasonable considering the complexity of the case and the amount of labor required to initiate the case, move for default judgment, and prepare sufficient evidence in support of the damages and injunctive relief requested.  Moreover, the requested costs—for filing and service fees—are of the type normally incurred in preparation for litigation. Considering the competent evidence provided by the Plaintiffs in conjunction with the Court's Local Guidelines and the twelve *Johnson* factors, this Court determines that the Plaintiffs' requested fees and costs are reasonable.  For this reason, attorneys' fees and costs in the amount of $1,686.00 are awarded to the Plaintiffs and are included in the judgment.

D. <u>Injunctive Relief</u>

Finally, Plaintiffs request that this Court order the Defendant to permit an audit of its wage and payroll records.  By becoming a party to the Collective Bargaining Agreement and Trust Agreement, the Defendant agreed that the Plaintiffs would have the authority to conduct an audit of these records in order to determine contributions owed to the Plaintiff

during unreported months and the accuracy of the Defendant's contributions.   Rockstroh Aff. ¶ 15.   Pursuant to section 502(g)(2)(E) of ERISA, a court may award "such other legal or equitable relief as the court deems appropriate."   29 U.S.C. § 1132(g)(2).   Given that the audit has been made necessary by the Defendant's failure to comply with its contractual obligations, the Plaintiffs are entitled to this injunctive relief.   For these reasons, the Defendant is hereby ordered to permit a complete audit of its wage and payroll records for the period from November 1, 2010, through the date of the audit.   Pursuant to the Trust Agreement, the Defendant shall bear the reasonable costs of this audit, including accountants' fees.   Upon affidavit of the Plaintiffs, judgment may be entered in the full amount revealed as owing by this audit, plus interest and expenses that are provided for under section 502(g) of ERISA as well as the Collective Bargaining and Trust Agreements.

CONCLUSION

For the reasons stated above, the Motion for Default Judgment filed by the Plaintiffs (ECF No. 6) is GRANTED.   Judgment in the amount of $38,887.00 SHALL BE ENTERED for unpaid contributions and interest on the unpaid contributions against the Defendant A1 Mechanical Insulation L.L.C.   Attorneys' fees and costs SHALL BE ENTERED in the amount of $1,686.00 and SHALL BE INCLUDED in the judgment. The total amount of damages awarded to the Plaintiffs is $40,573.00.   Interest will continue to accrue until the date of payment at a rate of 1½%.   Additionally, the Defendant is ordered to permit an audit of its wage and payroll records for the period from November 1, 2010, through the date of the audit.   The Defendant shall bear the reasonable costs of this audit.

A separate Order follows.

Dated:        February 14, 2013              _____/s/_____

                                             Richard D. Bennett
                                             United States District Judge